**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **TRACFONE WIRELESS INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:07-CV-2033-L-BK** |
| | § | |
| **VICKI S. BROOKS and MOHAMED** | § | |
| **A. MOHAMED,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to the District Court's *Order of Reference*, Doc. 54, the Court has considered *Plaintiff's Emergency Motion to Reopen Case to Enforce Violation of Permanent Injunction*, Doc. 51. By its motion, Plaintiff requests that the Court (1) find Defendants in contempt of Court; (2) permit Plaintiff to conduct expedited discovery to ascertain the amount of damages caused by Defendants' violations; and (3) award it attorneys' fees and costs incurred in pursuing this motion.[1] Doc. 51 at 1, 10-11.

On December 3, 2014, the Court conducted an evidentiary hearing.[2] Doc. 67. The Court heard the testimony of Defendants and a witness for Plaintiff, and also received a number of exhibits. Based on the evidence and applicable law, the undersigned recommends that the District Court **DENY** *Plaintiff's Emergency Motion to Reopen Case to Enforce Violation of Permanent Injunction*.

---

[1] Plaintiff additionally requested that the Court reopen this case based on Defendants' violations. Doc. 51 at 1. The District Judge already granted that relief. Doc. 53.

[2] The Court will refer to Defendants individually as Brooks and Mohamed and collectively as Defendants.

I.     BACKGROUND

Plaintiff is a provider of prepaid wireless phone service and also sells wireless phones. This case commenced in December 2007 when Plaintiff sued Defendants for unlawfully buying and reselling two of Plaintiff's phone models in bulk.  Doc. 1.  Plaintiff alleged in its complaint that, as a mobile virtual network operator, its business model is designed to provide an affordable product to potential customers.  Doc. 1 at 5.  Accordingly, Plaintiff sells its phones at a loss with the expectation that its customers will purchase Plaintiff's prepaid airtime cards, thereby allowing Plaintiff to recoup its losses and ultimately earn a profit.  Doc. 1 at 5.  At issue in this case are two of Plaintiff's phone brands, TracFone and NET10 (collectively, "the TracFone/NET10 phones").

Plaintiff alleged in its complaint that Defendants and their co-conspirators (1) acquired bulk quantities of the TracFone/NET10 phones from internet sites and retail stores; (2) unlocked or "reflashed" them to alter Plaintiff's software code so the phones could be used without loading airtime minutes from Plaintiff's prepaid airtime cards; and (3) re-sold them.  Doc. 1 at 2, 11-13.  Plaintiff claimed this caused it substantial harm as it was deprived of the opportunity to recoup its losses on the sale of the TracFone/NET10 phones and earn profits by providing wireless service to legitimate customers.  Doc. 1 at 14.  Plaintiff sued Defendants for, *inter alia*, breach of contract, trademark infringement, unfair competition, and contributory trademark infringement.  Doc. 1 at 16-27.  When Defendants did not respond to the suit, default judgments were entered against them in 2008.  Brooks was ordered to pay Plaintiff $434,200 in damages, Doc. 23 at 6, and the Court entered a permanent injunction prohibiting her from, *inter alia*:

> purchasing or selling any wireless mobile phone that [she knows] or should know
> bears any TracFone Trademark, any other trademark owned or used by TracFone,
> or any other model of wireless mobile phone sold or marketed by TracFone
> ("TracFone/NET10 Handsets").  Specifically, the [Defendant is] enjoined from

purchasing or selling all models of TracFone/NET10 Handsets currently offered for sale by TracFone, or that may be offered for sale in the future, as listed and updated from time to time on TracFone's and NET10's websites, http://TracFone.com/activation_pick_brand.jsp and www.net10.com, including without limitation the following TracFone/NET10 handsets [followed by a list of 18 model numbers].

Doc. 24 at 2-3.

Mohamed was ordered to pay $3,044,600 to Plaintiff, and the same injunction was entered against him with the exception that his list of prohibited phones contained 29 model numbers. Doc. 50 at 1-3. No further activity occurred in the case until Plaintiff filed the instant *Emergency Motion to Reopen Case to Enforce Violation of Permanent Injunction*, alleging that Defendants recently had been spotted purchasing TracFone/NET10 phones. Doc. 51 at 1-2. The District Court granted the motion to reopen and referred the case to the undersigned for findings and a recommendation regarding whether Defendants should be found in contempt of court. Doc. 53; Doc. 54.

## II.     EVIDENCE PRESENTED

Following the District Court's referral of the matter, the undersigned ordered the parties to appear before the Court for a preliminary hearing on November 24, 2014. Doc. 55. Prior to the hearing, Plaintiff submitted supplemental briefing in an effort to clarify that Defendants had been aware of the lawsuit against them and of the fact that permanent injunctions prohibiting them from buying and selling TracFone/NET10 phones had been entered against them. Doc. 56. To that end, Plaintiff filed a proof of service demonstrating that Brooks was personally served with the Court's default judgment and permanent injunction on August 20, 2008. Doc. 56-1 at 1. Brooks concedes that she had actual knowledge of the default judgment and permanent injunction. Doc. 70 at 3.

As to Mohamed, Plaintiff submitted a declaration from its fraud investigations manager, Kevin Wehling.  Wehling attested that he and Plaintiff's counsel spoke with Mohamed by telephone on November 3, 2014, and Mohamed said he did not think the phones that he and Brooks had been purchasing were TracFones because he knew he was not allowed to buy and sell TracFones.  Doc. 56-3 at 2.  Wehling averred that counsel "specifically asked Mohamed if he was aware that there was injunction in place that prohibited him and Brooks from buying and selling any TracFone products . . . [and] Mohamed explicitly acknowledged that he was aware of this fact.  Mohamed indicated that he did not believe he had violated the injunction because he did not think the phones he and Brooks purchased were TracFone products."  Doc. 56-3 at 2.  Plaintiff argues that Mohamed thus had sufficient actual notice of the injunction.  Doc. 56 at 5-6.

At the November 24, 2014 hearing, Defendants appeared *pro se*.  The undersigned found at the conclusion of the hearing that Plaintiff had made a prima facie showing sufficient to support issuance of a show cause order.  Doc. 58.  Accordingly, the Court ordered Defendants to reappear on December 3, 2014 and be prepared to show cause why they should not be held in contempt of court for violating the permanent injunctions.[3]  Doc. 58.  The Court also provided Defendants with copies of the default judgments and permanent injunctions that had been entered against them.

Prior to the show cause hearing, Defendants retained counsel.  At the outset of the December 3, 2014, hearing, defense counsel stated that Mohamed was contesting whether he had received a copy of the default judgment and injunction prior to the filing of the instant motion and whether he had adequate notice of its provisions.  Doc. 65 at 3, 23.  Counsel further argued

---

[3]   *See Order of Re-Reference*, No. 3:05-CV-0654-D, Doc. 331 at 3-4 (Fitzwater, CJ), explaining the procedure and standards governing a contempt motion and hearing referred to the magistrate judge pursuant to 28 U.S.C. 636(b).

that the two phones the Defendants had been purchasing in bulk were both Straight Talk

Wireless phones, namely the ZTE Majesty and the Samsung Galaxy SIII, which were not

TracFone/NET10 phones and thus were not covered by the permanent injunctions.  Doc. 65 at

18.  Defendants' counsel further contended that even if the phones were covered by the Court's

permanent injunction, Defendants could not have reasonably known that fact, thus, they should

not be held accountable for their purchase and distribution.

Brooks took the stand first.  She testified that she understood that the default judgment

and permanent injunction prohibited her from buying TracFone or NET10 phones, and she

believed TracFones were sold in TracFone packaging.  Doc. 70 at 29.  Plaintiff introduced into

evidence a Straight Talk ZTE Majesty phone, and Brooks acknowledged that the first line on the

back of the package in smaller print stated "Straight Talk is a service of TracFone Wireless."

Doc. 70 at 43; *see* Pltf. Ex. 1 (ZTE Majesty cell phone).  She averred that she had never read the

back of the package, however, and that when she was buying phones they were always locked up

and she had to have a sales associate unlock them.  Doc. 70 at 44.  Brooks stated that if she had

read the back of the package and seen that language, she would not have purchased the phones

because she had been told not to buy TracFone phones.  Doc. 70 at 45.

On cross-examination, Brooks testified that she did not purchase any phones in TracFone

packaging.  Doc. 70 at 48-49; *see* Deft. Exs. D3.1-3.4 (photos of TracFone Samsung and LG

models and store display).  Rather, she and Mohamed purchased Straight Talk ZTE Majesty and

Samsung Galaxy SIII phones.  Doc. 70 at 49-50; *see* Deft. Exs. D4-D5 (photos of ZTE Majesty

and Samsung Galaxy SIII phones).  Brooks stated that while Straight Talk phones could only be

purchased at Walmart, TracFone/NET10 phones could be purchased at many retail locations.

Doc. 70 at 55-56.  She thought the Straight Talk phones were Walmart phones.  Doc. 70 at 66.

In terms of how Straight Talk and TracFone/NET10 phones are displayed at Walmart, Brooks said they are not situated anywhere near each other.  Doc. 70 at 56-60, 65-66; *see* Deft. Exs. D6.1-6.4, 9 (photos of Walmart phone displays).  Next, Brooks testified that it was not possible to read the back of the Straight Talk phone packages while the phone was on display because of the way the phones were locked up.  Doc. 70 at 62-63; *see* Deft. Ex. D7 (photo of locked up Straight Talk phone).  Further, the phones were sometimes locked up in glass cases.  Doc. 70 at 63; *see* Deft. Exs. D8.1-8.2 (photos of Straight Talk phones in locked glass cases).

Defense counsel next pulled up TracFone's and NET10's websites and confirmed with Brooks that neither the Samsung Galaxy SIII nor the ZTE Majesty was listed for sale thereon.  Doc. 70 at 67-68; *see* Deft. Ex. 10.2 (screen shots of TracFone website listing cell phones for sale); Deft. Ex. 11.2 (screen shots of NET10 website listing cell phones for sale).  Brooks then examined a Straight Talk brochure and testified that there was no mention of TracFone until the ninth and final page, and she needed her reading glasses to be able to see this lone reference.  Doc. 70 at 72-75.  Finally, Brooks testified that Mohamed was in jail when the District Court entered the default judgment against him, and he did not get released until several months later.  Doc. 70 at 77.

Wehling testified on cross-examination that he understood that Mohamed thought he was not buying TracFone products.  Doc. 70 at 106.  Wehling next reviewed  TracFone's website and confirmed that in order to see any reference to Straight Talk, one had to scroll to the bottom right hand corner of the home page.  Doc. 70 at 106.  Wehling also acknowledged that the Straight Talk logo on the website was much smaller than the one that appeared in his declaration which Plaintiff had submitted in connection with the instant motion.  Doc. 70 at 107; *see* Deft. Ex. 10.1 (screen shots of TracFone website).  On re-direct, Wehling testified that the ZTE Majesty and the

Samsung Galaxy SIII phones (both still in the original packaging), that Plaintiff had entered into evidence, each had TracFone's concentric circle logo on them.  Doc. 70 at 115-16; *see* Pltf. Exs. 1-2.  On re-cross, Wehling acknowledged that the logo on the Samsung Galaxy SIII is not on the front of the phone.  Doc. 70 at 117-18; *see also* Deft. Exs. D5.1 (phone package showing that the TracFone logo cannot not be seen while the Samsung Galaxy SIII is in its packaging).

Plaintiff next called Mohamed as a witness.  Doc. 70 at 122.  Mohamed testified that he knew from 2008 forward that he was not permitted to buy TracFone/NET10 phones because someone came to the jail and told him as much.  Doc. 70 at 123.  Mohamed stated that he thought Straight Talk phones were a Walmart brand.  Doc. 70 at 125.  He testified on cross-examination that he was not given a copy of the default judgment against him until October 2014, although he had spoken with TracFone's attorney about the prohibition against him purchasing TracFone/NET10 phones in November 2008 while he was incarcerated.  Doc. 70 at 145-47.  On re-direct examination, Mohamed acknowledged that he had told Plaintiff's counsel that he knew about the "prior case" and that there was an injunction that prohibited him from buying TracFone products.  Doc. 70 at 153.

Prior to the conclusion of the hearing, Defendants introduced additional documentary evidence, including (1) a screen shot of the Straight Talk website which contained fine print at the very bottom of the screen that read "Straight Talk is a registered trademark of TracFone Wireless, Inc. 2014 TracFone Wireless, Inc.," Deft. Ex. 12; Doc. 70 at 144; (2) various Straight Talk advertisements which do not appear to contain any reference to TracFone or NET10, and many of which contain the phrase "Only at Walmart," Deft. Exs. 13-16; Doc. 70 at 144-45; (3) a Straight Talk poster, Deft. Ex. 28; Doc. 70 at 145; and (3) a Straight Talk advertisement which contains in fine print the statement that "Straight Talk is a service provided by TracFone

Wireless Inc., America's largest no-contract cell phone provider . . .," Deft. Ex. 29; Doc. 70 at 143-45.

## III.    APPLICABLE LAW

To satisfy the clear and convincing standard necessary to justify a finding of civil contempt, the movant's evidence must be "so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (quotation omitted).  The movant must prove that (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the court order.  *Id.* at 581-82.

## IV.    PARTIES' ARGUMENTS

Plaintiff asserts that its investigation reveals that Defendants have purchased several hundred TracFone phones from at least nine states over the past several months in violation of the permanent injunctions.  Doc. 51 at 1-6, 9-10.  Plaintiff argues that Defendants' violations of the Court's default judgments and permanent injunctions require injunctive relief pursuant to the Court's civil contempt power.  Doc. 51 at 1, 7.

In their response to the Court's show cause order, Defendants argue that the phones Plaintiff accuses them of wrongfully buying in bulk are sold in Straight Talk packaging, not TracFone/NET10 phone packaging, and are thus not within the scope of the permanent injunctions.  Doc. 65 at 11, 17-18.  Defendants note that Straight Talk Wireless was started two years after entry of the default judgments.  Doc. 65 at 11.  Thus, the permanent injunctions could not have included the Straight Talk phones at issue here, nor is Plaintiff permitted to expand the

8

scope of the permanent injunctions by referring the bound party to an outside source such as its website's listing of phones to determine what conduct is permissible.  Doc. 65 at 19, 23-26-27.

Defendants also assert that they did not know and had no reason to know that Straight Talk is owned by TracFone.  Doc. 65 at 20.  They point out that Straight Talk phones are sold in Straight Talk packaging under Straight Talk signage exclusively at Walmart stores, and Straight Talk phone packaging and store displays are substantially different from TracFone cell phone brand packaging.  Doc. 65 at 11-14.  Defendants assert that Straight Talk and TracFone also maintain distinct separation of identities on both Walmart's website as well as their own websites, with any reference to the association between the two companies being in fine print or small logos at the bottom of the respective websites.  Doc. 65 at 14-17, 20-21.  Additionally, Defendants urge that Plaintiff's reliance on the fine print on the back of the phones' packages is unavailing because it is not possible for consumers to examine the backs of the packages until a Walmart employee removes the box from a locked display.  Doc. 65 at 21.

Defendants also point to language in the injunctions that they contend is overbroad, such as that enjoining Defendants from "purchasing or selling . . . any other model of wireless mobile phone sold or marketed by TracFone."  They argue that this language technically precludes them from going to any of TracFone's competitors and purchasing any model of phone that TracFone or NET10 also happen to market or sell.  Doc. 65 at 25.  Similarly, Defendants note that the universe of people restrained by the injunctions (Defendants' "agents, attorneys, and investigators") is so overbroad that it would preclude even defense counsel from purchasing certain brands of new phones because Plaintiff also sells those models.  Doc. 65 at 25-26. Finally, Mohamed argues that the injunction against him is unenforceable because there is no

evidence that he received a copy of the injunction before he purchased the Straight Talk phones, only that he received the instant motion which referenced the injunction.  Doc. 65 at 27-28.

## V.   ANALYSIS

### 1.  Notice of Injunction to Mohamed

Rule 65(d)(2) provides that an injunction only binds a party who receives "actual notice of it by personal service or otherwise."  FED. R. CIV. P. 65(d)(2).  Mohamed testified that he did not receive an actual copy of the default judgment and permanent injunction entered against him until October 2014.  Doc. 70 at 146.  The Court finds this testimony to be credible.  While Mohamed did not receive personal service of the injunction at the time it was entered, it is less clear whether he "otherwise" received sufficient notice of its contents by virtue of his conversation with Plaintiff's counsel about it in November 2008.  See *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.,* 646 F.2d 800, 808 (2nd Cir. 1981) (holding that a party has a duty to monitor the progress of the litigation and to ascertain the terms of any order entered against him, and the unexcused failure to do so may justify a finding of contempt when the party knows that some order has been entered against him); *In re Araujo,* 292 B.R. 19, 24 (Bankr. D. Conn. 2003) ("[F]or purposes of a civil contempt action, actual knowledge of a court order will be imputed to a party when that party had the opportunity to know of a court order, but simply chose not to gain actual knowledge of the order.") (quotation and citations omitted).  The Court need not reach that question, however, because the undersigned finds that Plaintiff's motion should be denied for the reasons set forth below.

### 2.  Requirements of Rule 65(d) of the Federal Rules of Civil Procedure

Rule 65(d) requires that an order granting an injunction "(A) state the reason why it issued; (B) state the terms specifically; and (C) describe in reasonable detail − and not by

referring to the complaint or other document − the act or acts restrained or required." FED. R.
CIV. P. 65(d)(1).  If an injunction fails to state the reasons for its issuance, incorporates other
documents by reference, or is otherwise not specific in its terms, the injunction fails to comply
with Rule 65(d).  This "no-reference requirement has been strictly construed in this circuit," *Fed.
Trade Comm'n v. Southwest Sunsites, Inc.*, 665 F.2d 711, 723 (5th Cir. 1982), "to allow the
parties to be able to interpret the injunction 'from the four corners of the order' as required by
Rule 65(d)," *id.* at 724; *see also Seattle-First Nat. Bank v. Manges*, 900 F.2d 795, 800 (5th Cir.
1990) ("[I]f the court chooses to issue an injunction . . . the injunction must turn square corners
as required by Rule 65(d).").

The permanent injunctions entered in this case, which appear to have been submitted to
the Court by Plaintiff, do not contain any explanation as to why they are being issued, which
violates Rule 65(d)(1)(A).  *See generally* Doc. 24; Doc. 50.  Further, while Plaintiff contends that
Defendants have violated the injunction by "purchasing or selling any wireless mobile phone that
they know or should know bears [1] any TracFone Trademark, [and] [2] any other trademark
owned or used by TracFone," the only way to make this determination is to refer to a list of
Plaintiff's trademarks, and no such list is included within the order granting the injunction.  This
violates the no-reference rule and fails to comply with Rule 65(d)(1)(C).  *Southwest Sunsites,
Inc.*, 665 F.2d at 723.

Additionally, the third subpart of the prohibitive language in the injunctions lacks the
specificity required by Rule 65(d)(1)(B).  To wit, enjoining Defendants from "purchasing or
selling . . . any other model of wireless mobile phone sold or marketed by TracFone" is
overbroad because, as Defendants note, they would be precluded from going to Verizon, AT&T,
Virgin Mobile, or any of TracFone's other competitors and purchasing any model of phone that

TracFone or NET10 also happen to sell.  *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)

(stating that Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those

faced with injunctive orders, and to avoid the possible founding of a contempt citation on a

decree too vague to be understood.").

The injunctions also lack specificity in relation to the issues presented in this matter

because they do not enumerate that Defendants are prohibited from purchasing the phone models

at issue here, namely the Samsung Galaxy SIII and the ZTE Majesty, although the injunctions do

specify dozens of other phone models.  *Id.* (stating that because "an injunctive order prohibits

conduct under threat of judicial punishment, basic fairness requires that those enjoined receive

explicit notice of precisely what conduct is outlawed."); *Sierra Club v. Callaway*, 499 F.2d 982,

991 (5th Cir. 1974) (stating that an injunction does not prohibit acts that are not within its terms

as reasonably construed).  To the extent the injunctions instruct Defendants to refer to

TracFone's and NET10's websites for other prohibited phones, that also violates the no-

reference rule.  *Southwest Sunsites*, 665 F.2d at 723.

> *3.  Whether Defendants Knew or Should Have Known that Straight Talk is Owned by TracFone*

Even if the permanent injunctions in this case did comply with Rule 65, the undersigned

nevertheless concludes that Plaintiff has not demonstrated by clear and convincing evidence that

Defendants either knew or should have known that their purchases of the Samsung Galaxy SIII

and ZTE Majesty violated the injunctions.  *Test Masters*, 428 F.3d at 582.  As an initial matter,

the undersigned finds credible Defendants' testimony that they did not actually know that those

particular Straight Talk phone models were associated with TracFone.  Moreover, for the reasons

discussed below, the Court finds that Defendants did not have cause to know there was an

association between the two entities.

While the back of the ZTE Majesty phone did state that "Straight Talk is a service of TracFone Wireless," Doc. 70 at 43, Brooks credibly testified that she had never read the back of the package and that the phones were always locked up before she bought them, which would have made it impossible for her to read the wording.  Doc. 70 at 62-63; *see* Deft. Ex. D7 (photo of locked up Straight Talk phone); Deft. Exs. D8.1-8.2. (photos of phones locked up in glass cases).  Once the decision has been made to purchase a phone and have an employee unlock it from its display, it does not strike the Court as unlikely that one would not then read the back of the package.  Moreover, given the vastly different nature of the Straight Talk and TracFone packaging, store displays, and display locations, Defendants would have had little reason to suspect that there was any association between the two.   *See* Deft. Exs. D3.1-3.4 (photos of TracFone phone models and store display); Deft. Exs. D4-D5 (photos of Straight Talk ZTE Majesty and Samsung Galaxy SIII phones); Deft. Exs. D6.1-6.4, 9 (photos of Walmart phone displays).

Further adding to the confusion is the fact that purchases of Straight Talk phones at retail stores can only be made at Walmart, which could understandably have led Defendants to believe that Straight Talk is a Walmart brand, while TracFone/NET10 phones can be purchased at multiple retail locations.  Doc. 70 at 55-56, 125.  TracFone's and NET10's websites also do little to bring attention to their affiliation with Straight Talk.  Neither the Samsung Galaxy SIII nor the ZTE Majesty are listed for sale thereon, and only a small Straight Talk logo appears on TracFone's website at the bottom of the home page.  Doc. 70 at 67-68, 106-07; *see* Deft. Ex. 10.1 (screen shots of TracFone website with Straight Talk logo on page 4); Deft. Ex. 10.2 (screen shots of TracFone website containing cell phones listed for sale); Deft. Ex. 11.2 (screen shots of NET10 website containing cell phones listed for sale).

Similarly, a screen shot of the Straight Talk website contains only fine print at the very bottom of the site that references TracFone.  *See* Deft. Ex. 12 (stating that "Straight Talk is a registered trademark of TracFone Wireless, Inc. 2014 TracFone Wireless, Inc.").  Additionally, the Straight Talk brochure does not mention TracFone until the last page, and the Court, like Brooks, found it difficult to read without reading glasses.  Deft. Ex. 25.  Compared to the other wireless phone brochures that Defendants introduced into evidence, which prominently feature any affiliation with other entities, the Straight Talk brochure's reference to TracFone is nominal at best.  *Compare* Deft. Ex. 25 *with* Deft. Exs. 20, 21, 22, 23, 24.  Considering the evidence as a whole, the Court thus concludes that Plaintiff has not demonstrated by clear and convincing evidence that Defendants knew or should have known that their purchase of the Samsung Galaxy SIII and ZTE Majesty phones violated the permanent injunctions.  *Test Masters*, 428 F.3d at 582.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the District Court **DENY** *Plaintiff's Emergency Motion to Reopen Case to Enforce Violation of Permanent Injunction*, Doc. 51.

**SO RECOMMENDED** on December 16, 2014.


_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE